CLERK'S OFFICE
A TRUE COPY
Jan 23, 2024
s/ D. Olszewski

Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br><br>records and information about the location of the cellular telephone assigned call numbers 262-351-4520 (the "Target Cell Phone"), whose service provider is T-Mobile ("Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.  24   MJ   39 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized):*

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Distribution and Possession with Intent to Distribute Controlled Substances, Conspiracy to Distribute and Possess with the Intent to Distribute Controlled Substances |

The application is based on these facts:

Please see Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Christopher Moss, DEA Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date:  01/23/2024

_____
*Judge's signature*

City and state: _____   Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Christopher Moss, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call numbers **262-351-4520** (the "Target Cell Phone"), whose service provider is T-Mobile ("Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.     Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing,

routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

4.     I have been a certified and sworn law enforcement officer since September 15, 2008 I am employed as a narcotics investigator with the City of Waukesha Police Department Narcotics and Vice Unit while currently assigned as a Task Force Officer with the Waukesha County Drug Task Force / DEA Group # 69 from January 2022-Present.  I have been a part of dozens of state and federal investigations related to drug activity.

5.     I have received extensive training on death investigations, narcotics investigations, and cell phone analytics.

6.     I have conducted investigations of death, drug, and property crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims.  I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience.  Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone.  I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos, which are also used by drug traffickers.

7.     I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I

Page 2

have been trained regarding these offenses and has arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 18, United States Code, Section 922(o) and Title 21, United States Code, Sections 841 and 846. I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

8. I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

9. I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession firearms trafficking, and drug trafficking. Additionally, I am familiar with street

Page 3

name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

10.     This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.  This affidavit is also based upon information gained from interviews with cooperating witnesses, and confidential sources (CSs), whose reliability is established separately herein.

11.     The investigation to date has included traditional law enforcement methods, including, but not limited to: CSs, information from other law enforcement officers; recorded conversations; controlled buys; documentary evidence; physical surveillance; telephone records; electronic surveillance; and physical seizures.  However, because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

12.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Fernando D. BOLDEN Jr. (M/B, DOB: 10/09/1996) and suspected other

unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II. PROBABLE CAUSE

### A. BACKGROUND AND DEBRIEF OF CONFIDENTIAL SOURCES

13.     Beginning in August 2023, Drug Enforcement Agency (DEA) and the Waukesha County Drug Task Force, hereinafter referred to as "case agents," began investigating an armed drug trafficking person operating in the Eastern District of Wisconsin (WI) which involves Fernando D. BOLDEN Jr. and suspected other unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance case agents have learned BOLDEN sells fentanyl, purported to be heroin, and is armed with firearms during controlled transactions.  Case agents also determined that BOLDEN is suspected of utilizing multiple residences and multiple vehicles, including rental vehicles, to store and distribute narcotics throughout the Eastern District of Wisconsin.

14.     In August 2023, a Confidential Source (CS) 1 contacted investigators and stated that he/she has knowledge that a target with the street name "ICE" was selling mid-quantities of heroin, which "ICE" told CS 1 is actually "feti".  Based on my training, experience, and investigation into "ICE", I understand "feti" to mean fentanyl, which was also verified by CS 1.

15.     The CS 1indicated that he/she has known "ICE" for several years, as "ICE" has supplied CS 1 with large quantities of heroin in the past during paid drug transactions.  The CS 1 indicated that "ICE" had been arrested previously for suspected weapon and drug charges in Milwaukee County in 2023.

16.     CS 1 indicated that he/she had contacted "ICE" via known telephone number 262-351-4520.  TFO Moss queried 262-351-4520 using a reliable law enforcement database, which

Page 5

identified the mobile provider as T-Mobile.

17. CS 1 information is credible and reliable, where CS 1 has given information concerning an individual involved in illegal activities which has been independently verified through this investigation. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS 1 is cooperating with law enforcement for consideration on pending criminal drug charges in Waukesha County. CS 1 has no arrests or convictions relating to dishonesty but has had past arrests or convictions for felony drug offenses and other felony Operating While Intoxicated offenses.

18. TFO Moss knows a "controlled buy" (and/or controlled contact) is a law enforcement operation in which an CS purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and prerecorded buy money. When a CS is used, he/she is searched for contraband, weapons, and money before the operation. The CS is also equipped with a concealed body recorder and monitoring device. When the transaction is completed, the CS meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The CS is again searched for contraband, weapons, and money. Additionally, all telephone calls made by the CS while under the direction and control of case agents are recorded.

**B.      CONTROLLED BUYS WITH "ICE" AND IDENTIFICATION THEREOF**

19. The Waukesha County Drug Task Force, DEA Group #69, is conducting an investigation into a target known as "ICE". "ICE" is believed to be a trafficker of Cocaine and Heroin in the Metro Milwaukee area. "ICE" is known to utilize multiple cell phone numbers, including 262-351-4520, which is the number provided by a Confidential Source (CS) working

with the Waukesha County Drug Task Force. Prior to the first controlled transaction, information provided by the CS 1 led to the potential identification of "ICE" as Alvear R. MCCLENDON (M/B, DOB: 03/10/1994) based on physical characteristics, age, and criminal arrests that occurred during the timeframe the CS 1 was purchasing narcotics from "ICE". A Wisconsin Department of Corrections booking photograph of MCCLENDON was provided to the CS 1, who stated that MCCLENDON appeared to be the dealer "ICE" whom the CS 1 last had contact with at least one (1) year prior to the start of the investigation.

20. Since August 2023, CS 1 engaged in three controlled buys with "ICE" in the Milwaukee Metro area, yielding approximately 26 grams of Heroin, where the substances field tested positive for Fentanyl. Generally, during the controlled buys of controlled substances and/or firearms the CS 1 placed a recorded phone call and/or sent recorded text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, provide pre-recorded funds for the purchase of the controlled substance, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions.

21. During the controlled buys with CS 1, investigators consistently observed a red BMW SUV bearing Wisconsin Registration ARK-8038 {Registered Owner: Latia N. JOHNSON; DOB: 08/06/1998; DL: J5255349878606; 7169 N. 42nd Street, Milwaukee, Wisconsin 53209; on a red 2015 BMX X3 SUV; VIN: 5UXWX9C50F0D58341} arrive in the area of the controlled buy with CS 1 and conduct the narcotics transaction with CS 1 utilizing pre-recorded buy money.

22.      In late September 2023, following the completion of a controlled buy with "ICE", TFO Moss conducted further follow-up into the identification of "ICE" and discovered the original suspect MCCLENDON had been arrested and incarcerated in the Waukesha County Jail on Monday, September 18th 2023 by a local municipal agency.  TFO Moss contacted the CS 1 and again confirmed that the dealer "ICE" from previous controlled transactions was the same subject, therefore ruling out  MCCLENDON as a target of this investigation.

23.      A third controlled transaction with "ICE" occurred utilizing CS 1, where CS 1 confirmed that "ICE" was the same subject as previous controlled buys, where the third controlled buy was initiated while MCCLENDON was still incarcerated.

24.      In early October 2023, TFO Moss conducted follow-up regarding the identification of "ICE".  The target had continuously utilized the 2015 BMW X3 bearing Wisconsin Registration ARK-8038 listing to Latia N. JOHNSON.   TFO Moss utilized the Wisconsin Circuit Court website, which is believed to be truthful and accurate, and observed that JOHNSON had a pending Milwaukee County Circuit Court Case (2023CF001395) with a pending charge of Maintain Drug Trafficking Place filed on April 1st 2023.  Additionally, TFO Moss observed that on October 3rd 2023, a paternity case was filed by JOHNSON against Fernando D. BOLDEN Jr. in Milwaukee County (2022PA002721PJ).  TFO Moss contacted the Milwaukee County District Attorney's Office regarding the pending drug charge case and obtained the criminal complaint, which also included BOLDEN, who also has pending charges for narcotics and weapons violations in Milwaukee County (2023CF001394).  Of note was JOHNSON and BOLDEN shared the same physical mailing address in the criminal complaint, as well as the same mailing address for the 2015 BMW X3 SUV that "ICE" had utilized on three (3) controlled drug transactions.

Page 8

25.    TFO Moss located BOLDEN's Milwaukee County booking photograph and provided it to the CS to review without any identifying information attached.  The CS confirmed from the booking photograph of BOLDEN that "ICE" was, in fact, BOLDEN from the three (3) controlled transactions for Fentanyl.

26.    A subsequent review of the Criminal Complaint that was provided reference BOLDEN's open Milwaukee County Case stated that on Tuesday, March 21, 2023 at approximately 9:44 am, a City of Milwaukee Police Department detective was conducting undercover surveillance in the rear parking lot of 7169 N. 42nd St., regarding an unrelated narcotics complaint and observed a silver 2022, Nissan Altima, 4 door, gray, bearing Tennessee registration BCY-3432, arrive in the parking lot alongside the detective's undercover vehicle.  The detective observed the driver and sole occupant of the Nissan, exit wearing a dark gray colored Nike sweatshirt, light gray sweatpants, and white tennis shoes.  The detective observed the driver to be holding a silver handgun in his right hand, which the driver placed into his right pants pocket after exiting the vehicle. The driver then walked to the rear door of 7169 N. 42nd St., used keys to open the rear door, and entered the residence. The detective captured this image on video surveillance.  Another MPD officer who was investigating BOLDEN looked at the video and positively identified the driver who was armed with the handgun as BOLDEN.

27.    On March 27, 2023, Milwaukee Police were preparing to execute a search warrant at 7169 N. 42nd St., City and County of Milwaukee, Wisconsin.  Investigators were conducting undercover surveillance at that location prior to the warrant being executed. The officers observed BOLDEN and his live-in girlfriend, JOHNSON, exit the residence and enter the silver Nissan Altima. The two left the location but shortly thereafter the Nissan returned to the parking lot with only BOLDEN.

28. The officers observed BOLDEN enter and then quickly exit the residence. BOLDEN then exited the residence and investigators observed him to be armed with a handgun. BOLDEN then entered the Altima and drove away from the residence. Officers followed BOLDEN to the Speedway Gas Station located at 9091 N. 76th St., located in the City and County of Milwaukee, Wisconsin. Surveillance Officer's observed BOLDEN park the Nissan, exit the driver's seat, and enter the Speedway Gas Station. At approximately 10:35 am, investigators moved in and located BOLDEN inside the gas station, where BOLDEN was taken into custody. During a search incident to arrest of BOLDEN, investigators recovered a loaded teal Glock 19, 9 mm handgun from BOLDEN's front hooded sweatshirt pouch, as well as a set of keys that were later discovered to open the front door of the residence at 7169 N. 42nd Street.

29. Milwaukee Police investigators then executed the warrant at 7169 N. 42nd Street. During the search, officers located the following: Olive and Black Polymer 80, 9mm handgun with no serial number and an extended magazine, clear plastic baggie that contained 44 round orange pills identified as Alprazolam 5 mg, 227.80 grams of Fentanyl, 121.2 grams of Cocaine and $50,259.00 dollars of US Currency.

30. On October 11, 2023, TFO Moss applied for a Search Warrant for T-Mobile location data based on the foregoing information. That warrant was granted by the Honorable William E. Duffin, Magistrate Judge, for a period of 30 days. That GPS location data has been subject to ongoing investigation with the following results:

31. In early November 2023, a fourth controlled buy was conducted with "ICE" in the City of Milwaukee utilizing CS 1, which yielded 12.0 grams of Fentanyl. During the controlled buy, investigators conducted pre-surveillance at 9318 W Allyn Street, which court authorized GPS location had assisted in determining this address as the residence of "ICE" based on ping data and

locating the red BMW SUV at this residence on multiple occasions. Additionally, investigators observed the red BMW SUV arrive at the 9318 W Allyn Street address and a black male subject wearing a white t-shirt was observed exiting the BMW and walking towards the rear entry door of this address. Investigators also observed a dark blue Audi SUV arrive at 9318 W Allyn Street, where another black male exited this vehicle and began conversing with another subject out of view behind the residence. The second subject reentered the Audi SUV and left the area quickly, followed by the black male wearing the white t-shirt reentering the red BMW SUV and leaving the residence to travel to the location of the controlled buy followed by investigators who maintained visual observation.

32.     On November 7th 2023, TFO Moss conducted surveillance at 9318 W Allyn Street and observed the red BMW SUV parked on the rear concrete slab of the side-by-side town house. TFO Moss observed that the vehicle was running, as the brake lights were engaged and then go off, followed by a male black subject exiting the driver's door wear a black head wrap, black jacket and black pants. The subject walked behind the BMW SUV and towards the rear entry door to 9318 W Allyn Street before going out of sight. TFO Moss obtained photographs of the subject and, upon comparing them to booking photographs, identified the subject as BOLDEN.

33.     On January 5th 2024, the carrier for BOLDEN's cellphone number was confirmed by T-Mobile to still be an active line that was not transferred to any other person, nor had it been disconnected since the last visual surveillance by investigators.

34.     On January 17th 2024, a federal Grand Jury hearing was conducted regarding the case into BOLDEN, where a federal arrest warrant was granted by the Grand Jury members for firearm violations and drug distribution charges.

35.     Case agents believe that continued monitoring of the location data utilized by **262-351-4520** will assist in further investigating the above-described narcotics distribution activity and will further assist in facilitating identification of the parties involved in these transactions and activities.  TFO Moss reviewed previous court authorized GPS location data on the phone number associated with "ICE" and observed that the location data showed the cellphone associated with the phone number 262-351-4520 was in numerous locations throughout the City of Milwaukee and City of Wauwatosa.  It is believed that some of these locations could provide intelligence on sources of supply for the Fentanyl that has been purchased by CS 1 from "ICE" during this investigation and Case Agents are requesting this warrant authorizing continued collection of data related to 262-351-4520 for 30 days to further investigate "ICE's" activities, and to identify locations which "ICE" is traveling to further his drug distribution trafficking activities. It is further believed that this location information will assist in locating and arresting Fernando Bolden, for whom there is an active arrest warrant.

### I.      Service Provider Information

36.     Case agents queried telephone number **262-351-4520** via a law enforcement database, which identified the mobile carrier as T-Mobile.

### II.     TECHNICAL BACKGROUND

37.      I believe cellular telephones assigned call numbers **262-351-4520** (the "Target Cell Phone"), whose service provider is T-Mobile ("Service Provider"), a wireless telephone service provider, continues to contain valuable information on this account that could be used as evidence for the possible crimes of conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 841 and 846.

Page 12

### III. JURISDICTION

38.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

### IV. TECHNICAL BACKGROUND

39.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Service Provider's network or with such other reference points as may be reasonably available.

#### A. Cell-Site Data

40.     In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

Case 2:24-mj-00039-WED   Filed 01/23/24   Page 14 of 23   Document 1

41.     Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

42.     I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

43.     As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

Page 14

44.     I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

45.     Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

46.     Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

**C. Pen-Trap Data**

47.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile

Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### D. Subscriber Information

48. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

49. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone's user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications between Fernando D. BOLDEN Jr. and other identified and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent

Page 16

with normal patterns. This information is relevant to show whether Fernando D. BOLDEN Jr. and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## V. AUTHORIZATION REQUEST

50.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

51.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

52.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.   The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

53.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

## ATTACHMENT A

### Property to Be Searched

1.      Records and information associated with the cellular device assigned call number **262-351-4520** (referred to herein and in Attachment B as the "Target Cell Phone"), that is in the custody or control of T-Mobile referred to herein and in Attachment B as the "Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

2.      The Target Cell Phone.

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from September 15, 2023, to present:

        i.   Names (including subscriber names, usernames, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.   Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

Page 20

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with

Case 2:24-mj-00039-WED   Filed 01/23/24   Page 22 of 23   Document 1

such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.**     This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**III.     Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Fernando BOLDEN, and other identified and unidentified subjects. during the period of September 15, 2023, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.